ESTATE OF McLEAN: RANNEY, Special Administrator, Appellant, vs. McLEAN, Claimant, Respondent.

*September 12—October 8, 1935.*

224

For the appellant there were briefs by *Godfrey, Arnold & Cullen* of Elkhorn, and oral argument by *A. L. Godfrey.*

*William A. Sheldon* of Elkhorn, for the respondent.

FOWLER, J.   We will first take up the motion to dismiss the appeal and the countermotion of the appellant.   Sec. 324.01 (2), Stats., provides that "any executor, administrator . . . or any person aggrieved by any order or judgment of the county court may appeal therefrom to the supreme court." We are of opinion that a special administrator is an administrator within the meaning of this section.   He is empowered by sec. 311.07, Stats., to "preserve all the property of the deceased for the executor or administrator who may afterward be appointed, and may for such purposes commence and maintain actions as an administrator."   The prosecution

of an appeal when no administrator has been appointed falls within the intent of this statute. It is held in Michigan, under a statute similar to sec. 311.07 that the language next above quoted authorizes a special administrator "to defend against unconscionable claims" and he "has for that purpose the same duty as a general administrator," and that "if he has such duty" he certainly has the right to follow the case "to the appellate court" and "obtain a review." *In re McNamara's Estate,* 148 Mich. 346, 111 N. W. 1066. The same is held under a like statute in Nebraska. *Cadman v. Richards,* 13 Neb. 383, 14 N. W. 159. The only provision of our statutes that can be argued to militate against this view is sec. 313.03 (3), which provides that no hearing shall be had on claims or judgment rendered thereon "until after issuing letters testamentary or of administration." But the issuance to a special administrator of the instrument evidencing his appointment and authorizing him to administer the estate until the appointment of a general administrator would seem to be "letters of administration." As to substitution of the general for the special administrator, sec. 311.09, Stats., provides for such substitution in case of actions commenced by the special administrator, and upon reason the same rule should be applied in case of appeals. The order of substitution is accordingly made, and the motion to dismiss the appeal is denied. The alternate motion of appellant falls with the granting of the motion for substitution.

The appellant's contentions on the merits may be stated as, (1) that the finding of the trial court of a contract to make a will is not supported by the evidence, and (2) that if a valid contract was made the court applied an erroneous rule of damages.

(1) That the decedent promised to make provision for the claimant in his will clearly appears. If he had not made a will pursuant to the promise to do so, we might feel that a

valid contract was not sufficiently established. The rule is that such contracts must be established, not only by a preponderance of the evidence, but by evidence that is clear and convincing. A mere preponderance of the evidence will not support such a contract. Such a contract must be definite enough in its terms to permit of specific performance or to indicate the damages to be allowed for its breach. The contract found might perhaps be held not to be sufficiently established under this rule, were it not for the fact that the decedent, by making the will, had made certain that which the evidence as to the making of the contract left uncertain. The rule seems to be that where a will is made pursuant to a promise to make one supported by a past consideration, the contract will be enforced. It is not claimed that the agreement here involved was without consideration. The promise of forbearance to sue, even if no liability existed, operated as a consideration for the promise to provide by will. One may buy his peace and must pay for it what he agrees to pay. What the testator does by a will made pursuant to the promise is taken as what he intended to do in fulfilment of it. What was left uncertain in the instant case was made certain by the testator's performance of his promise. A will made under an agreement based upon a valuable consideration is contractual as well as testamentary, and equity will enforce the provision made for the promisee. A will so made cannot be revoked by the testator so as to defeat the bequest or devise made by it pursuant to his agreement. Nor can the testator destroy the effect of a provision therein so made by making a subsequent disposition by will of the property so devised or bequeathed by the first will. He cannot so avoid his contract which he has performed. His heirs can gain no advantage by his revocation, if he revokes the will, nor can devisees or legatees under a subsequent will gain any. The execution of the will pursuant to the promise creates a trust in the property devised or bequeathed pursuant to the con-

tract which will be enforced in equity against the heirs or those claiming under a subsequent will. *Torgeson v. Hauge,* 34 N. D. 646, 159 N. W. 6, 3 A. L. R. 164, is a well-considered case, upholding the propositions above stated, and citing a multitude of cases in their support. In a note to this case in 3 A. L. R. 172, it is stated that "the general rule is that a will executed pursuant to a contract cannot be revoked so as to relieve the testator of its contractual obligation," and cases are cited from several jurisdictions as supporting the text, and several cases supporting it are fully stated. We consider that the above citations afford sufficient support for our views above stated. If the provision for the claimant would prevail against heirs in case of revocation, or against beneficiaries under a will subsequently executed, with equal reason does it prevail against the heir by adoption. That nothing passes by the will to the beneficiaries named therein other than the promisee under the contract can no more serve to defeat the testator's performance of his agreement with the claimant than could a revocation or the execution of a subsequent will. It is true as the trial court and the parties to the appeal considered, that a child, adopted after the execution of the will, takes the same share in the adoptive father's estate as he would have taken had no will been made. Sec. 238.10, Stats. *Sandon v. Sandon,* 123 Wis. 603, 101 N. W. 1089. But the adopted daughter takes subject to whatever claims are allowed against the estate. It is also true as they considered that a widow under sec. 233.13, Stats., need not take under a will, but may take under the statutes, and that under sec. 237.01, Stats., the real estate of the testator descended two-thirds to the adopted child and one-third to the widow under sec. 233.01, Stats., and the personal property goes to them in the same proportion under sec. 233.13, Stats., so that nothing passed to the remainderman under the will. But the widow took subject to the rights of claimants whose claims are established, whether

those claims are for specific performance or money demands, except that by virtue of her election she cannot be deprived of dower, or homestead rights, if any, in the lands of which the decedent by the will gave the net income to the claimant during his life.

The parties to the appeal both demand reversal of the judgment appealed from on the ground that the trial court applied a wrong rule of damages. The appellant claims that the rule of damages is that laid down in the case of *Frieders v. Estate of Frieders,* 180 Wis. 430, 193 N. W. 77, and the arguments of counsel are directed to what the damages of the claimant are in view of that rule. These contentions need not be stated, as we are of opinion that in view of the execution of the will by decedent, the rule of damages laid down in the *Frieders Case* does not apply. The will should be admitted to probate; its execution in performance of the contract found by the court should be decreed to have created a trust for the benefit of the claimant, and a trustee should be appointed to carry out the trust; and the real estate should be held to pass subject to the trust except as to the widow's rights as above stated, and the personalty to be distributed to the adopted daughter and the widow according to the law of descent and distribution.

*By the Court.*—The judgment of the county court is reversed, and the record remanded with directions for further proceedings in accordance with the opinion. No costs are awarded to either party, but the appellant will pay the clerk's costs out of the estate.